UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  15-31208 (AMN) |
| PRISCILLA B. TAYLOR, | : | Chapter 7 |
| *Debtor* | : | |
| | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| ATTORNEY GENERAL, GEORGE | : | |
| JEPSEN ON BEHALF OF MICHAEL | : | |
| MOSCOWITZ AND THE LAW OFFICES | : | |
| OF MICHAEL MOSCOWITZ, LLC | : | |
| *Movant* | : | |
| v. | : | |
| PRISCILLA B. TAYLOR, | : | |
| *Respondent* | : | |
| | : | |
| KARA S. RESCIA, | : | |
| *Trustee* | : | Re:  ECF Nos. 245, 247 |

**MEMORANDUM OF DECISION AND ORDER
GRANTING RECONSIDERATION AND DENYING
<u>REQUEST FOR SANCTIONS UPON RECONSIDERATION</u>**

**Appearances**

| | |
|---|---|
| Robert M. Singer, Esq. | *Counsel for the Debtor* |
| Law Offices of Robert M. Singer, LLC | |
| 2572 Whitney Avenue | |
| Hamden, CT 06518 | |
| | |
| Robert J. Deichert, Esq. | *Counsel for State of Connecticut* |
| Assistant Attorney General | *Attorney General, George Jespen on* |
| 55 Elm Street | *behalf of Michael Moscowitz and the* |
| P.O. Box 120 | *Law Offices of Michael Moscowitz, LLC,* |
| Hartford, CT 06141-0120 | *State Court Appointed Trustee* |

Before the Court is a motion to reconsider an order denying a motion for sanctions

("Motion for Reconsideration").  ECF No. 247.  The State of Connecticut Attorney General

on behalf of Michael Moscowitz and the Law Offices of Michael Moscowitz, LLC ("State

Court Defendants") seek reconsideration of the Court's Memorandum and Order Denying the Motion to Compel Abandonment and Motion for Sanctions (the "Decision"), ECF No. 245, pursuant to Fed.R.Bankr.P. 7052, 9023, and 9024.  ECF No. 247.  The Motion for Reconsideration is granted, but the result remains unchanged.

## I.    RELEVANT PROCEDURAL HISTORY

The Court assumes familiarity with the procedural history set forth in the Decision. In relevant part, the State Court Defendants' underlying motion sought sanctions pursuant to 11 U.S.C. §§ 362(k) and 105(a) against the Debtor, Priscilla Taylor ("Ms. Taylor") and her counsel, Robert Singer, Esq. ("Attorney Singer"), for alleged violations of the automatic stay by the exercise of control over litigation pending before the Connecticut Superior Court entitled *Priscilla B. Taylor v. Michael Moscowitz,* case number NNH-CV-16-6061858-S ("State Court Litigation") at a point in time when only the Chapter 7 Trustee had authority to prosecute the litigation ("Motion for Sanctions").  ECF No. 220. Specifically, the State Court Defendants identified five filings in the State Court Litigation they allege violated the automatic stay, including state court docket entry numbers 113.00, 114.00, 117.00, 119.00, and 121.00.  ECF No. 220, p. 2.

The Decision concluded that the State Court Defendants were not entitled to sanctions against Ms. Taylor or Attorney Singer because 1) their request was moot, and more importantly, 2) they lacked prudential standing to seek sanctions pursuant to § 362(k).  ECF No. 245.

The State Court Defendants now seek reconsideration on the following points:

(1) that the Court, without explanation, applied the *nunc pro tunc* doctrine to hold State Court Defendants' request for sanctions moot and the Court should reconsider its application by balancing the equities of the case; and,

(2) that the Court failed to address the State Court Defendants' argument that the Court should exercise its discretion pursuant to § 105(a) to impose sanctions against Attorney Singer.

ECF No. 247.

The State Court Defendants do not seek reconsideration of the denial of sanctions against Ms. Taylor, but only the denial of sanctions as against Attorney Singer. ECF No. 247-1, p. 1, fn. 1. Additionally, the State Court Defendants do not request reconsideration of the conclusion that the State Court Defendants lacked prudential standing under § 362(k). ECF No. 247-1, P. 17, fn. 10. Attorney Singer objected to the Motion for Reconsideration and the State Court Defendants responded to his objection. See ECF Nos. 254, 256.

## II.    GOVERNING LAW

### *Standard for Reconsideration*

Fed.R.Bankr.P. 9023 makes Fed.R.Civ.P. 59 applicable to bankruptcy proceedings while Fed.R.Bankr.P. 9024 makes Fed.R.Civ.P. 60 applicable to bankruptcy proceedings. Fed.R.Civ.P. 52 permits a court to amend its finding or make additional findings and to amend its judgment accordingly upon motion by a party.[1] The determination of whether a motion for reconsideration should be granted is within the "sound discretion of the court." *Chorches v. Trinity Lutheran Church (In re Peburn)*, Docket Nos. 06-30835 (ASD), 10-03022, 76, 2013 Bankr. LEXIS 1394, at *3 (Bankr. D. Conn. Apr. 5, 2013)(*citing Mendell ex rel. Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir. 1990)).

---

[1]    Fed.R.Bankr.P. 9014 and 7052 make F.R.Civ.P. 52 applicable to the instant Motion.

While Fed.R.Civ.P. 59 does not provide specific grounds for amending or reconsidering a judgment, it is well settled that the grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)(*citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'...." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012)(*citing Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "The standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

To the extent the Motion for Reconsideration seeks relief pursuant to Fed.R.Bankr.P. 9024, the State Court Defendants failed to state whether they are claiming relief under Fed.R.Civ.P. 60(a), for a clerical mistake, or if they are claiming relief under Fed.R.Civ.P. 60(b), for relief from a final judgment, order, or proceeding.[2]

---

[2] The Court notes the State Court Defendants did not allege a clerical mistake or omission and so does not find they intended to seek relief pursuant to Fed.R.Civ.P. 60(a). Even if they intended to seek relief pursuant to Fed.R.Civ.P. 60(a), the motion would be denied. The State Court Defendants seek reconsideration on the basis that the Court erred in finding their request for sanctions moot and by failing to address their request under § 105(a). A clerical error correctable by Fed.R.Civ.P. 60(a) is one that does not alter the original meaning of the order or challenge the legal or factual findings therein. *See Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150 (2d Cir. 1999)("omission of the word 'not' from the original judgment was a clerical mistake [as] [t]he district court's ruling and intention [were] clear from its memorandum and order."). Here, the requested amendment to the Decision is far from "clerical" in nature. Rather, the State Court Defendants request the Court change the substantive aspects of its Decision to reach a different conclusion which is not relief afforded pursuant to Fed.R.Civ.P. 60(a).

4

Despite the failure to identify one of the six enumerated criteria set forth in Fed.R.Civ.P. 60(b), the Court interprets the Motion for Reconsideration as seeking relief under Fed.R.Civ.P. 60(b)(1) and, to the extent it may apply, 60(b)(1)(6).  "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."  *McInnis v. Town of Weston*, 458 F. Supp. 2d 7, 11 (D. Conn. 2006)(*citing United States v. Int'l Broth. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)(discussing Rule 60(b)).  Under Rule 60, "[t]he burden of proof is on the party seeking relief."  *Int'l Broth. of Teamsters*, 247 F.3d at 391.  "[W]hether to grant a party's Rule 60(b) motion is committed to the 'sound discretion' of the [] court."  *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)(*citing Montco, Inv. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir.1981)).  "A bankruptcy court abuses its discretion if its decision is based on an error of law or clearly erroneous factual findings, or 'cannot be located within the range of permissible decisions.'"  *In re Sapphire Development, LLC,* 523 B.R. 1, 5 (D. Conn. 2014)(*quoting Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

### Nunc Pro Tunc Doctrine & Abandonment by a Chapter 7 Trustee

The first issue raised by the Motion for Reconsideration is the application of the *nunc pro tunc* doctrine in connection with a Chapter 7 Trustee's abandonment.  Generally, *"[n]unc pro tunc,* Latin for 'now for then,' refers to a court's inherent power to enter an order having retroactive effect*." In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 214 (2d Cir. 2014)(*citing Iouri v. Ashcroft*, 487 F.3d 76, 87 (2d Cir. 2007)).

5

The application of the *nunc pro tunc* doctrine to a bankruptcy trustee's abandonment of property is not novel and Justice Cardozo explained the genesis of the concept in *Brown v. O'Keefe*, 300 U.S. 598 (1937):

> Whatever title or inchoate interest may have passed to the trustee was extinguished by relation as of the filing of the petition when the trustee informed the court that the shares were burdensome assets, and was directed by the court to abandon and disclaim them. In such case "the title stands as if no assignment had been made." A precise analogy is found in the law of gifts and legacies. Acceptance is presumed, but rejection leaves the title by relation as if the gift had not been made.
> *Brown*, 300 U.S. at 602 (citations omitted); s*ee also Sessions v. Romadka*, 145 U.S. 29 (1892); *Sparhawk v. Yerkes*, 142 U.S. 1 (1891).

Similarly, the Second Circuit has held that:

> When the trustee in bankruptcy abandons an asset, he is to be treated as having never had title to it; the abandonment is said to relate back, so that "the title stands as if no assignment had been made."
> *Rosenblum v. Dingfelder*, 111 F.2d 406, 409 (2d Cir. 1940)(*citing Brown*, 300 U.S. at 602).

Thus, "[u]pon a trustee's abandonment, the abandoned property reverts to the debtor and the debtor's rights to the property are treated as if no bankruptcy petition was filed."  5-554 *Collier on Bankruptcy* ¶ 554.02 (*citing In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd*, 502 U.S. 410 (1992)).   In other words, "[w]hen property of the bankrupt is abandoned, the title reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously."  *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010)(internal quotation marks and citations omitted); *see also Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 395, n.1 (9th Cir. 1964)("[t]he ordinary rule is that, when a trustee abandons property of the bankrupt, title reverts to the bankrupt, *nunc pro tunc*.").  *Nunc pro tunc* reversion, "is a fiction, and a fiction is but a convenient device, invented by courts to aid them in achieving a just result.  It is not a categorical imperative,

6

to be blindly followed to a result that is unjust." *Wallace*, 338 F.2d at 395 n.1; *see also In re Hat*, 363 B.R. 123, 141 (Bankr. E.D. Cal. 2007)(finding the equities including the trustee's lack of funds to perform basic farming tasks favored abandonment *nunc pro tunc* to provide the debtor with the requisite insurable interest in the properties).

In *Barletta v. Tedeschi*, 121 B.R. 669 (N.D.N.Y. 1990), the court applied the concept of *nunc pro tunc* reversion to conclude that a debtor could maintain a cause of action even though he lacked standing to sue at the time he commenced the action. *Barletta v. Tedeschi*, 121 B.R. 669, 674 (N.D.N.Y. 1990). There, the debtor filed a complaint to avoid the expiration of the statute of limitations although title to the claim remained vested in the bankruptcy trustee. *Barletta*, 121 B.R. at 672. By the time the trustee abandoned the claim, the statute of limitations had run. *Barletta*, 121 B.R. at 672. The court determined that dismissing the debtor's claim for lack of standing would create an inequitable result by extinguishing the claims through the inaction of the bankruptcy trustee – who did not intend to pursue the claim – while simultaneously preventing the debtor from taking action. *Barletta*, 121 B.R. at 674.[3]

### Automatic Stay Violations and a Court's Contempt Power Pursuant to § 105(a)

It is fundamental that pursuant to 11 U.S.C. § 362(a), "a petition … [automatically] operates as a stay, applicable to all entities, of – (3) any act … to exercise control over property of the estate." 11 U.S.C. §§ 362(a)(1), (a)(3); s*ee* 3-362 *Collier on Bankruptcy*

---

[3]    In *Martin v. United States*, Docket No. 3:13-CV-03130, 2017 U.S. Dist. LEXIS 1285 (C.D. Ill. Jan. 5, 2017), the bankruptcy judge noted the *Barletta* case was persuasive authority for the concept that, upon abandonment, title to the claims reverted to [the debtor] *nunc pro tunc* even though the statute of limitations expired before the bankruptcy trustee abandoned the claims. The court concluded the debtors had, "timely filed [a] claim with the IRS — even though they technically lacked standing at the time because the claims belonged to the bankruptcy trustee [because] [t]he abandonment of the claims by the bankruptcy trustee had the effect of reverting title to [the debtors] back to the date they filed the bankruptcy petition such that they, by operation of the abandonment, actually had standing all along." *Martin*, 2017 U.S. Dist. LEXIS 1285, at *20.

¶ 362.01.  Property of the estate includes all legal or equitable interests of the debtor in property, including causes of action.  11 U.S.C. § 541.  "A debtor may be liable for violating the automatic stay."  *In re Sofer*, 507 B.R. 444, 449 (Bankr.E.D.N.Y. 2014), *aff'd sub nom. Adar 980 Realty, LLC v. Sofer*, No. 14-CV-2977 ARR, 2014 WL 3890110, *aff'd sub nom. In re Sofer*, 613 Fed. Appx. 92 (2d Cir. 2015)(summary order).  Section 362(k)(1) provides in relevant part that, "[a]n individual injured by any willful violation of [the automatic] stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k).

As noted in the Decision, a party asserting a claim for a violation of the automatic stay must have standing.  *See, In re Teligent*, Inc., 417 B.R. 197, 209 (Bankr.S.D.N.Y. 2009)("Standing is a threshold issue in every federal litigation").  "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.  This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To have prudential standing, a party must show its claim falls within the zone of interests protected by § 362.[4]

---

[4]        "Prudential standing encompasses the rule against the adjudication of generalized grievances, the rule prohibiting plaintiffs from asserting the rights of third parties, and the rule barring claims that fall outside 'the zone of interests to be protected or regulated by the statute.'" *Motesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016)(*quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982)).  The primary purposes of § 362 are to provide protection to the debtor and property of the estate, and to ensure equality of distribution among all creditors. 3 *Collier on Bankruptcy* ¶ 362.03; *see also In re Ampal-Am. Israel Corp.*, 502 B.R. 361, 373 (Bankr.S.D.N.Y. 2013)("[T]he automatic stay was designed to protect pre-petition creditors' from a grabbing creditor whose acts adversely affected their distribution; it was not designed to protect potential defendants who also happen to be creditors of the estate").  "The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003); *see also Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009)(stating that, "[a]s a general rule, the automatic stay protects only the debtor, property of the debtor or property of the estate. … The stay 'does not protect non-debtor parties or their property.'")(internal citations omitted).

Additionally, in order to have standing to seek damages for a violation of the automatic stay, "[a] creditor must assert a claim for his own direct injury and not a claim that belongs to the estate." *In re Ampal-American Israel Corp.*, 502 B.R. 361, 371 (Bankr.S.D.N.Y. 2013)(citations omitted).    "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim." *In re Ampal-American Israel Corp.*, 502 B.R. at 371; *see also Geltzer v. Brizinova (In re Brizinova)*, 554 B.R. 64, 82 (Bankr.E.D.N.Y. 2016)("Chapter 7 trustees, as fiduciaries of the Chapter 7 estate, 'have standing to seek sanctions against [the debtor] for violation of the automatic stay.'" (*quoting McCord v. Sofer (In re Sofer)*, 507 B.R. 444, 452 (Bankr.E.D.N.Y. 2014))).

The law in this Circuit is clear that sanctions for violations of the automatic stay are only appropriate as to debtors who are natural persons pursuant to [§ 362(k)][5].    *See In re Chateaugay Corp.*, 920 F.2d 183, 186–187 (2d Cir.1990).    For non-individual entities, contempt proceedings under a court's § 105(a) power are the proper means of compensation for willful violations of the automatic stay.    *In re Chateaugay Corp.*, 920 F.2d at 186–87.

Section 105(a) permits a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."    11 U.S.C. § 105(a). And, while a court has "broad authority [] to take any action that is necessary or appropriate 'to prevent an abuse of process,'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007), it "may not contravene specific statutory provisions." *Law v. Siegel*, 571 U.S. 415, 421 (2014)("a statute's general permission to take actions of a certain type

---

[5]    Section 362(k) was designated as § 362(h) prior to the 2005 amendments.  The language of § 362(k) remained unchanged from § 362(h) and caselaw analyzing § 362(h) remains relevant.

must yield to a specific prohibition found elsewhere"); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code").

An award of damages to a non-individual entity resulting from a stay violation under § 105(a) is within the discretion of the bankruptcy court. *In re Lehman Brothers Holdings Inc.*, 526 B.R. 481, 497 (S.D.N.Y. 2014), as corrected (Dec. 29, 2014), *aff'd sub nom. In re Lehman Brothers Holdings, Inc.*, 645 Fed. Appx. 6 (2d Cir. 2016)(summary order)("[A]n entity that suffers a willful stay violation will be awarded damages in the discretion of the bankruptcy court*"); see also Sensenich v. Ledyard National Bank (In re Campbell)*, 398 B.R. 799, 814 (Bankr. D. Vt. 2008)("an award of damages under [§ 362(k)] is mandatory, but an award of damages under section 105(a) is discretionary.")(*citing In re Pace*, 67 F.3d 187 (9th Cir. 1995)). Additionally, "[a] contempt proceeding requires a finding of maliciousness or lack of a good faith argument and belief that the party's actions were not in violation of an automatic stay." *Ball v. A.O. Smith Corp.*, 321 B.R. 100, 108 (N.D.N.Y. 2005), *aff'd*, 451 F.3d 66 (2d Cir. 2006)(*citing In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104-1105 (2d Cir.1990)).

## III.    DISCUSSION

### *Granting Reconsideration*

The State Court Defendants assert the Court erred by applying the *nunc pro tunc* doctrine to conclude that the request for sanctions was moot, without explanation. They also allege the Court failed to address an argument that sanctions should be awarded to them pursuant to § 105(a). In light of the Second Circuit's caution that it would be an abuse of the Court's discretion to refuse to reconsider a decision based upon an

erroneous view of the law and where the State Court Defendants did, in fact, raise an argument pursuant to § 105(a) that was not fully addressed in the Decision, the Court concludes that the Motion for Reconsideration establishes a sufficient basis for the Court to reconsider its Decision.   Accordingly, the Motion for Reconsideration is GRANTED. The Court will address the State Court Defendants' claim that *nunc pro tunc* relief should not have been applied and their request for relief pursuant to § 105(a).

### Granting Nunc Pro Tunc Relief Upon Abandonment

Contrary to the record, the State Court Defendants claim the Court erred because it had expressly denied *nunc pro tunc* relief during oral argument and prior to the entry of the Decision.   ECF No. 247, p. 7-8.   As a result, the State Court Defendants argue, two conflicting orders exist.   A complete review of the colloquy at the end of the hearing demonstrates the Court took the matter under advisement[6] and did not enter a ruling.

Court:    I am going to take these matters under advisement. I will note that the ECF No. 230 was placed on the hearing list today at my request because a response had been filed and I wanted to clarify whether it was an objection. My understanding of the content of the response and based upon the discussion today is that it is not an objection. The things that I think are, I think ECF No. 190 I am going to report that a hearing was held and that it's moot upon the filing of the report of abandonment should it be filed.

Attorney Singer: Your Honor, what motion is that.

Court:    It's your motion to compel abandonment.

Attorney Singer: Ok, I just wanted, I was asking for *nunc pro tunc* relief, I just wanted to put that on the record.

Court:    To have the abandonment be *nunc pro tunc* to the date of the closing of the case or what date?

---

[6]    "A motion is taken under advisement 'once the court has everything it expects from the parties prior to making its decision.'"   *U.S. v. Harper*, 05-CR-6068L, 2007 WL 2688670, at *1 (W.D.N.Y. Sept. 10, 2007)(*citing States v. Piteo*, 726 F.2d 50, 52 (2d Cir.1984); *United States v. Bufalino*, 683 F.2d 639, 642-44 (2d Cir.1982), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983)).

Attorney Singer: The date of the conversion, Your Honor.

Court:               The date of the conversion.

Attorney Singer: I just like to put that on the record.

Attorney Deichert: Your Honor, that was what I was intending to object to.

Attorney Mackey: And the United States Trustee would object to that as well, Your Honor.   That was not the understanding of the parties that at the time the case was closed.

Court:               Ok, then what I am going to do is sustain that objection, Mr. Mackey's objection.  I am also going to note that independent of that objection, I don't see a basis to grant *nunc pro tunc* relief in this circumstance. There is a very specific requirement in the Second Circuit for getting *nunc pro tunc* relief and I don't think it's been satisfied here.  I am going to take [ECF No. 190] under advisement then and I just want to, thank you for reminding me that you are seeking *nunc pro tunc* relief, I just want to consider that again, but my inclination is I am going to enter an order denying that motion. But for today, I am taking it under advisement, I am going to review it one more time.  The amended motion for sanctions, I am also taking under advisement, ECF No. 220 and I don't know what I am going to be doing with that.

ECF No. 243 at 01:18:29 – 01:20:29.[7]

While the Court initially sustained the United States Trustee's objection to the application of the *nunc pro tunc* doctrine to the Chapter 7 Trustee's ("Trustee") abandonment, the Court concluded by stating it was taking the matter under advisement for further reflection and review.  Following the hearing, no written order entered on the docket[8], rather the docket clearly indicated that all matters were taken under advisement. *See* docket entries dated January 3, 2018.  The argument that the Court issued an order foreclosing its ability to later apply the *nunc pro tunc* doctrine in its Decision is untenable.

---

[7]     All timestamps indicate the hours minutes and seconds (00:00:00) for the .mp3 file publicly available at the referenced ECF No. as played on VLC Media Player.
[8]     When an activity is physically noted on the docket, it is "entered," and the order thereby becomes effective. 9 *Collier on Bankruptcy* ¶ 5003.03 (2019); see also Fed.R.Bankr.P. 5003, 9021.

As noted, *nunc pro tunc* relief in the context of a trustee's abandonment of property is not mandatory, but rather is an equitable doctrine to be applied to ensure a just result. In this instance and after a closer review of the chronology of the State Court Litigation[9] compared with the docket of this case, the equities support application of the *nunc pro tunc* doctrine.

Importantly, because Ms. Taylor was a *plaintiff* in the state court litigation, the automatic stay arising from § 362(a) did not act to stay all the litigation deadlines in her case, they way it would have if she had been a defendant in the state court litigation. *See Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994)("This Court has recognized that the automatic stay is applicable only to proceedings 'against' the debtor.")(citation omitted); *Tenas-Reynard v. Palermo Taxi, Inc.*, 2016 U.S. Dist. LEXIS 42423, at *17-18 (S.D.N.Y. Mar. 30, 2016)("[T]he automatic stay provision of Section 362 … 'does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.'")(*quoting In re Fin. News Network Inc.*, 158 B.R. 570, 572 (S.D.N.Y. 1993)). "Because debtors that enjoy an automatic stay may pursue claims against other parties, the stay also does not prevent entities against whom the debtor proceeds in an offensive posture — for example, by initiating a judicial or adversarial proceeding — from protecting their legal rights." *Tenas-Reynard,* 2016 U.S. Dist. LEXIS 42423, at *17-18; *see also In re Teligent, Inc.*, 459 B.R. 190, 198 n.8 (Bankr. S.D.N.Y. 2011)("A non-party does not violate the automatic stay by defending a lawsuit brought against it.").

---

[9]    The Court may take judicial notice, pursuant to Fed.R.Evid. 201(b), of judicial proceedings that have a direct relation to the matter at issue and are matters of public record, including court records that are available to the public through the Connecticut Judicial Branch website: www.jud.ct.gov.

Immediately prior to this case's conversion from Chapter 11 to Chapter 7 on November 17, 2016, the State Court Defendants filed a request in the State Court Litigation for the plaintiff – Ms. Taylor – to revise her complaint. *See* State Court Litigation docket entry no. 108.00. Pursuant to Connecticut Practice Book § 10-37, a request to revise is deemed to have been automatically granted and must be complied with within thirty days of the filing of the request to revise, unless the party to which the request is directed to files an objection within thirty days of the filing of the request. Conn. Practice Book § 10-37. Attorney Singer, on behalf of Ms. Taylor, moved for an extension of the deadline to respond to the request to revise to December 21, 2016, which the Superior Court granted.[10] *See* State Court Litigation docket entry nos. 109.00, 109.10. A day after the extension deadline passed on December 22, 2016, the State Court Defendants filed a motion seeking a judgment of non-suit against the plaintiff ("Non-Suit Motion"). *See* State Court Litigation docket entry no. 111.00. At the time the Non-Suit Motion was filed the State Court Litigation was property of the estate and under the supervision of the Chapter 7 Trustee.[11]

On December 29, 2016, Attorney Singer filed three documents in response to the Non-Suit Motion: a notice of bankruptcy, a motion seeking a stay of the State Court Litigation until March 1, 2017, and, an objection to the Non-Suit Motion. *See,* State Court Litigation docket nos. 112.00, 113.00, 114.00. In all three filings, Attorney Singer acknowledged that he did not have authority to act because the Trustee controlled the

---

[10]    Interestingly, the State Court Defendants do not list this motion for extension of time as one of the filings violating the automatic stay notwithstanding that the motion was filed four (4) days after conversion to Chapter 7. See, state court docket entry no. 109.00.

[11]    There is no evidence on the docket of the State Court Litigation that the State Court Defendants served a copy of the Non-Suit Motion, state court docket entry no. 111.00, on the Chapter 7 Trustee.

claim. The Court observes all three filings by Attorney Singer were made: 1) in response to the Non-Suit Motion, and, 2) in what appears to be an attempt to stay the State Court Litigation until the Trustee took action or employed Attorney Singer as counsel on behalf of the bankruptcy estate. Based upon the statements made in Attorney Singer's three filings and the lack of any filing by the Trustee in the State Court Litigation or in this Court, the record seems to indicate the Trustee was still investigating the claim at that time, and had not yet determined whether to pursue the State Court Litigation or abandon the claim to Ms. Taylor. This delay and lack of action by the Trustee left uncertainty in the State Court. The Court is not concluding that the Trustee's delay was unreasonable, rather the Court acknowledges, "[a] trustee must be accorded a reasonable period for investigation," which may – as is the case here – result in uncertainty no matter the length of the delay. *In re Ira Haupt & Co.*, 398 F.2d 607 (2d Cir. 1968). Thus, in the face of the Non-Suit Motion, Attorney Singer and Ms. Taylor were left in the unenviable position of choosing between filing documents to notify the State Court that Ms. Taylor's bankruptcy proceedings impacted the State Court Litigation or taking no action and risk an adverse ruling that might prejudice Ms. Taylor if the Trustee eventually abandoned the claim. A reasonable interpretation of Attorney Singer's conduct in filing the three documents – even though he lacked authority to do so – was that the action was taken to preserve the claim as an asset of the bankruptcy estate and as an asset for his client.[12]

After the expiration of the stay granted in the State Court Litigation, the Trustee did not appear in, employ counsel for, or prosecute the State Court Litigation. Additionally, the Trustee -- at that point in time -- did not move to abandon the claim as an asset of the

---

[12]     The Court notes that the Trustee did not seek sanctions or any order related to Attorney Singer's conduct in the State Court Litigation.

Bankruptcy estate.  As noted earlier, "[w]hile the trustee must be accorded a reasonable period for investigation, there comes a time when he must fish or cut bait." *In re Ira Haupt & Co.*, 398 F.2d at 613.  "[A] trustee has a wide variety of choices as to claims of the bankrupt - to prosecute, allow another to prosecute on mutually satisfactory terms, sell, or abandon, he may not simply do nothing and thereby permit a possibly valid claim to evaporate and a defendant to escape liability."  *In re Ira Haupt & Co.*, 398 F.2d at 613. Thus, even after three months had passed, Attorney Singer and Ms. Taylor were in the same difficult position of either doing nothing to maintain the State Court Litigation and risk the claim's dismissal, or, potentially violating the automatic stay by filing documents without the authorization of the Trustee.  It is at this time that Attorney Singer filed State Court Litigation docket entry nos. 117.00, 119.00, and 121.00 for which the State Court Defendants seek sanctions.  These three filings were also made after the Trustee sought an order authorizing her to close the case and be discharged from her duties as trustee, but reserved the State Court Litigation from abandonment.[13] ECF No. 166.  The Court granted the Trustee's motion, although it would not do so again due to the resulting confusion and delay in the State Court Litigation.[14]  ECF No. 182.

In balancing the equities of all the parties to determine whether to apply the *nunc pro tunc* doctrine to the Trustee's abandonment, the Court's primary concern is with the bankruptcy estate, its creditors, and the Trustee's administration of the estate.  After any concerns regarding the bankruptcy estate, the Court weighs the considerations of the

---

[13]    The Trustee's motion notes the estate, "has no unencumbered assets to pursue in this case [and] it is without resources to prosecute this action. Accordingly, it is uncertain at this time how long the [State Court] Litigation will take and whether or not there will be any recovery for the benefit of the bankruptcy estate."  ECF No. 166, p. 3.

[14]    The Court assumes the parties' familiarity with the procedural history of this case and the State Court Litigation following the entry of the Court's Order, ECF No. 166, as set forth in the Decision.

debtor and non-creditor third parties, such as the State Court Defendants. Here, application of the *nunc pro tunc* doctrine to the Trustee's abandonment has little to no effect on the bankruptcy estate – it fails to aid in either increasing or decreasing the amount available for distribution to creditors. As to Ms. Taylor, without the application of the *nunc pro tunc* doctrine, she may be prejudiced from the risk that all Attorney Singer's actions in the State Court Litigation will be declared void and without effect as he lacked authorization. Voiding the attorney's filings may result in a dismissal of the State Court Litigation and a loss of the debtor's claim.[15]

As to the State Court Defendants, the prejudice they will or have suffered as a result of the application of the *nunc pro tunc* doctrine is minimal. One possible prejudice the State Court Defendants have suffered is delay. However, there was no guarantee the State Court Defendants would not have suffered delay if the Trustee had decided to prosecute the motions filed by Attorney Singer, or to file her own motions in the State Court Litigation seeking extensions of time or a stay pending her evaluation of the estate's claims against the State Court Defendants.

To the extent the State Court Defendants argue it is inequitable to apply the *nunc pro tunc* doctrine because it will have the effect of mooting their claim for sanctions pursuant to § 362(k), I disagree. As previously stated in the Decision, the State Court Defendants lack prudential standing to assert a claim pursuant to § 362(k) for several reasons including because they are not creditors of the estate or a party that the automatic

---

[15] The Court notes that on September 24, 2018, the State Court granted the State Court Defendants' motion for non-suit for failure to comply with discovery and dismissed the State Court Litigation. See state court docket entry nos. 152.30, 152.40. Ms. Taylor thereafter filed a motion to open and vacate the judgment, which remains pending at this time. *See* state court docket entry no. 177.00

stay is intended to protect.[16]  In light of the lack of a viable claim pursuant to § 362(k), the loss of such a claim is given little to no weight.  As to a claim for sanctions pursuant to § 105(a), the Court declines to exercise its discretion under the circumstances of this case to award sanctions, as will be discussed further.

The State Court Defendants cite *United States v. Grant*, 971 F.2d 799 (1st Cir. 1992) as instructive, and, while they admit that *Grant* involved criminal fraud, they ask this Court to extend the First Circuit's reasoning and not apply the *nunc pro tunc* doctrine to this case.  ECF No. 247, p. 9-10.  I decline to do so.  *Grant* involved a debtor who fraudulently removed and concealed assets of the bankruptcy estate – facts and conduct that are vastly different from Attorney Singer's conduct of filing pleadings in the State Court Litigation.  The State Court Defendants also argue applying the *nunc pro tunc* doctrine would absolve Attorney Singer and would fail to send a strong message to Chapter 7 debtors and their counsel that violating the automatic stay has serious consequences.  ECF No. 247, p. 11-14.  While the Court is not condoning violations of the automatic stay, the Court will also not blindly disregard the scope of the attorney's actions and the larger context in which they were taken.  This is not a case equivalent to one where a debtor or her counsel concealed assets or attempted to exercise control of an asset to the detriment of the bankruptcy estate.

After consideration of the State Court Defendants' arguments, I conclude they lack merit.  I further conclude that under the circumstances of this case including the Chapter

---

[16]    Additionally, I note that any claim for sanctions for violating the automatic stay based upon Attorney Singer's exercise of control over assets of the bankruptcy estate is a generalized grievance attributable to all creditors of the bankruptcy estate and such a claim for sanctions would lie with the Chapter 7 Trustee as the proper party to assert the claim on behalf of the estate.  *See In re Ampal-American Israel Corp.*, 502 B.R. 361, 371 (Bankr.S.D.N.Y. 2013) (citations omitted).  Here, the State Court Defendants are not creditors of the estate who have been aggrieved by a stay violation.

7 Trustee's delay in abandoning the litigation and the confusion created by the Court's own Order dismissing the case, the equities favor application of the *nunc pro tunc* doctrine to the Trustee's abandonment of the State Court Litigation.   Accordingly, upon the Trustee's abandonment of the State Court Litigation, title and the right to pursue the State Court Litigation reverted to Ms. Taylor *nunc pro tunc.*   Thus, the State Court Defendants' Motion for Sanctions against Attorney Singer for filing documents at a time he lacked authority is moot.

### The Court's Discretion to Award Relief Pursuant to § 105(a)

In the underlying Motion for Sanctions, the State Court Defendants sought sanctions pursuant to §§ 362(k) and 105(a) against Attorney Singer for conduct consisting of filing five separate documents in the State Court Litigation, alleging each filing violated the automatic stay.  See ECF No. 220, p. 2.  In the Decision, the Court declined to award sanctions because the issue was moot upon the Trustee's abandonment of the State Court Litigation; and more importantly, because the State Court Defendants lacked standing to seek relief pursuant to § 362(k).[17]  ECF No. 245.

The State Court Defendants argue that –notwithstanding a possible lack of standing under § 362(k) -- this Court has the authority to sanction Attorney Singer to preserve the integrity of the automatic stay pursuant to § 105(a) and its inherent authority.[18]  The State Court Defendants cite to the case of *In re Indu Craft, Inc.*, 2012

---

[17]     The Decision concluded that the State Court Defendants's interests were not within the zone of interests protected by § 362(k) and, therefore, as non-debtor, non-creditor, third parties, the State Court Defendants lacked prudential standing to pursue stay violation remedies under § 362(k).  Additionally, the Decision noted that one of the State Court Defendants - the Law Firm of Michael Moscowitz, LLC - was not an individual within the meaning of § 362(k) and on that basis alone, lacked standing to pursue a claim for damages under § 362.  ECF No. 245.

[18]     To the extent the State Court Defendants request this Court exercise its inherent authority I decline to do so due to a lack of any showing of bad faith on the part of Attorney Singer.  "Inherent-power sanctions ordinarily require a clear showing of bad faith on the part of the party to be sanctioned.  Imposition of

WL 3070387 (S.D.N.Y. 2012), *aff'd*, 580 F.App'x 33 (2d Cir. 2014)(summary order), for the proposition that a court may have an obligation to take action.[19]  ECF No. 247, p. 16; ECF No. 237, p. 5.  While the Court agrees it has the authority to act under § 105(a) and may have the obligation to examine the State Court Defendants' motions, it disagrees that there is an obligation to award relief under the circumstances presented here.  A court's power under § 105(a) is discretionary.  And because a court possesses a contempt power does not require it be exercised.  *In re Gaslight Club*, 54 B.R. 252, 253 (Bankr. N.D. Ill. 1985); *see also In re Pace*, 67 F.3d 187 (9th Cir. 1995)("an award of damages under [§ 362(k)] is mandatory, [but] an award of damages under section 105(a) is discretionary.").

For substantially the same reasons I applied the *nunc pro tunc* doctrine, I conclude the exercise of discretion pursuant to § 105(a) is not warranted under these circumstances for the benefit of the State Court Defendants.  The unfortunate series of events in this case and in the State Court Litigation – including the State Court Defendant's filing of the Non-Suit Motion approximately thirty days after the Trustee's appointment, Attorney Singer's filing of documents in the State Court Litigation without authorization, the Trustee's lack of prompt prosecution or abandonment of the State Court

---

sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith, and inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *In re Plumeri*, 434 B.R 315, 328 (S.D.N.Y. 2010)(quotations omitted).  The State Court Defendants have failed to make the requisite showing that Attorney Singer was motivated by improper purposes to warrant sanctions under the Court's inherent authority.

[19]     The Court notes that the case *In re Indu Craft., Inc.*, 2012 WL 3073087 (S.D.N.Y. 2012), *aff'd*, 580 F.App'x 33 (2d Cir. 2014)(summary order) is not binding authority on this Court.  Even though the decision was affirmed by the Second Circuit, it was affirmed by summary order which does not have precedential effect.  The State Court Defendants have not cited any binding, precedential caselaw from the United States Supreme Court or Second Circuit Court of Appeals for the proposition that this Court has an obligation to award relief pursuant to § 105(a).

Litigation, and the Court's Order, ECF No. 182 – resulted in uncertainty, confusion, and delay.  This is not the situation where the conduct of Attorney Singer evinces a malintent to conceal, waste or dissipate assets of the estate.  Rather, as argued by Attorney Singer, his actions support an intent to preserve the State Court Litigation.  ECF No. 254, p. 1-2.

Although the State Court Defendants point to potential technical violations of the automatic stay, the State Court Defendants here failed to meet their burden to establish Attorney Singer acted with bad faith to justify a contempt order under § 105(a).[20]  In light of this failure and based upon a review of the chronology of events, the Court declines to exercise its discretion to impose sanctions against Attorney Singer.

The State Court Defendants argue that a failure to award sanctions will provide other debtors with an incentive to not follow the law.  The Court disagrees and notes the circumstances of this case are unique.  Violations of the automatic stay by debtors, debtors counsel, or any party are troubling and to be considered seriously.  Perhaps under different circumstances and perhaps upon motion brought by a Chapter 7 Trustee, this Court may rule differently.  But, on the facts and circumstances of this case, the Court concludes the imposition of a sanction pursuant to its § 105(a) discretionary power is unwarranted.

---

[20]    "Similar to the standard for imposing sanctions pursuant to 28 U.S.C. § 1927, a finding of bad faith by clear and convincing evidence is a prerequisite for imposing sanctions pursuant to the Court's powers under 11 U.S.C. § 105(a)." *Cuccio v. Cartisano (In re Cartisano)*, Docket Nos. 8-18-70703-reg, 8-18-08060-reg, 8-18-08061-reg, 2019 Bankr. LEXIS 641, at *15 (Bankr. E.D.N.Y. Mar. 4, 2019)(*citing Smart World Techs., LLC v. Juno Oneline Servs. (In re Smart World Techs., LLC)*, 423 F3d 166, 184 (2d Cir. 2005)). "Neither [the movant's] papers nor the record support a finding that [the movant's] claims pursuant to 11 U.S.C. § 105(a) are tied to a specific bankruptcy provision, therefore there is no basis to impose sanctions. Furthermore, assuming arguendo that the [the movant's] allegations were tied to a specific bankruptcy provision, the Court would then have to analyze [debtor's counsel's] conduct with the same high degree of specificity for a finding of bad faith [as required under 28 U.S.C. § 1927]." *Cuccio*, 2019 Bankr. LEXIS 641, at *15.  "Under 28 U.S.C. § 1927, the movant must show by clear and convincing evidence a clear showing of bad faith...[as a] prerequisite to the imposition of sanctions." *Cuccio*, 2019 Bankr. LEXIS 641, at *11. "[T]he record does not support such a finding sufficient to impose sanctions pursuant 11 U.S.C. § 105(a) against [debtor's counsel]." *Cuccio*, 2019 Bankr. LEXIS 641, at *15.

Importantly, exercising discretion and awarding relief to a party pursuant § 105(a) is inappropriate when the moving party lacks prudential standing under the specific statutory provision – here, § 363(k) – that was created by Congress to afford relief for violations of the automatic stay. *See Law v. Siegel*, 571 U.S. 415, 421 (2014)("a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere"). I recognize the power of § 105(a) is limited and should be exercised only as appropriate to carry out the provisions of the Bankruptcy Code. "[I]t should be universally recognized that the power granted to the bankruptcy courts under [§] 105 is not boundless and should not be employed as a panacea for all ills confronted in the bankruptcy case." 2 *Collier on Bankruptcy* ¶ 105.01 (16th); *see also Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir. 2002) ("[S]ection 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand. The authority bestowed thereunder may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code."). Here, awarding sanctions is not necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code.

In light of the State Court Defendants' lack of standing under § 362(k), and the absence of a finding of maliciousness on the part of Attorney Singer, I conclude an exercise of § 105(a) powers to preserve or protect the bankruptcy process by awarding sanctions to the State Court Defendants is not necessary or warranted.

## IV.   CONCLUSION

The Court agrees that reconsideration of its Decision is warranted to address the limited issues of the application of the *nunc pro tunc* doctrine to the Trustee's

abandonment of the State Court Litigation and the appropriateness of sanctions pursuant to § 105(a).  After review and consideration of the facts of this case, the procedural history of the State Court Litigation, and all of the State Court Defendants arguments, I find them unpersuasive.  I conclude the equities here weigh in favor of applying the *nunc pro tunc* doctrine to the Trustee's abandonment of the State Court Litigation, retroactively conferring authority upon Attorney Singer as the debtor's agent for the actions taken in the State Court Litigation, and denying the relief sought by the State Court Defendants pursuant to § 105(a).

Dated on September 10, 2019, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut